We will now hear case 20-50319, Baisley v. International Association of Machinists and Aerospace Workers. Mr. Jennings, we'll hear from you first. May it please the Court, in Janus v. Ask Me, the Supreme Court held that it violates the First Amendment to charge nonmembers' fees for politics without their affirming consent. In this case, the IAM is not seeking that consent. It's presuming that nonmembers want to pay for its politics. But this is a private employer as opposed to a public employer. Yes, Your Honor, but the First Amendment still applies in this case because the Supreme Court has held that there's state action when a union charges fees under the Railway Labor Act. Do you agree with me that in Janus the Court sort of tried to maybe pour a little cold water on the idea that the First Amendment applies the same as between public and private unions? What do you make of that footnote in Janus? Yes, Your Honor, I would take the position that the Supreme Court is questioning whether Hansen, if decided, would still come out the same way. But it's still binding precedent on this Court. The Supreme Court stopped short of overturning Hansen. And this Court in Shea has held that there's state action as well when a union charges fees for nonmembers under the Railway Labor Act. And it even was specific with regards to the opt-out requirements that the IAM was using in that case. So Shea is binding on this panel. But is it fair to say, though, that the Janus, the Supreme Court in Janus is essentially warning courts not to extend the Janus holding to private? No, Your Honor, because the Supreme Court stopped short of overturning Hansen. Whatever it said in that footnote was just dicta. And also, if you look at the distinctions... But you're asking us, I think, to extend Janus to the private context, right? The specific notion that opt-outs are essentially, if I understand your position, the opt-out regime is sort of categorically invalid and you have to have an opt-in affirmative consent. That's Janus, isn't it? Yes, Your Honor, but the Supreme Court's already held that with regards to the fees for politics, that there's state action. And Janus applies because of Hansen, Ellis, and Shea. Whereas strong a distinction in Janus are for the fees for collective bargaining. We're not challenging that aspect that Mr. Baisley paid for the fees for collective bargaining. Let's try it this way. We're a panel of the Fifth Circuit, obviously not on bonks, so we're bound by our prior precedents. What do you make of our Shea decision? Yes, Your Honor. So in Shea, there's two points that are really important. First, it found that there's state action under the Railway Labor Act. And that was specifically with the annual opt-out requirement the IAM was using in that case. And so it applied First Amendment standards. And it even applied a public sector case in that decision. It applied the Chicago Teachers Union. If I understand correctly, in Shea, we said that an annual requirement is not allowed. That much I imagine you agree with. But it seems to say that as long as a one-time opt-out is allowed or a continuing opt-out is affecting forever, that that's enough. In other words, opt-out is okay. There is language in Shea talking about initial opt-out requirements, but that's dicta because the nonmembers in that case weren't challenging the requirement that they opt out initially. And this Shea opinion, even there's language in it that says the sole issue that we're looking at is whether an annual opt-out requirement complies with the First Amendment. There's language in Shea that talks about how the Supreme Court decisions, Hudson Street, placed the burden of objection on the employee. Yes, Your Honor. I mean, it may be dicta, but we are, as a panel in Shea, are construing Supreme Court precedence as allowing opt-outs. And I take it your point is you have Janice that is changing the law. The problem I have here is that Janice kind of warns us, don't apply this to the private sector because we're about to overturn that. Right. So Shea was applying the Chicago Teachers Union versus Hudson case, which was a public sector case. And at the time, the Supreme Court seemed to, there was dicta in those cases saying that opt-out requirements for initial opt-out requirements were OK. But now the Supreme Court in public sector cases and First Amendment cases says that any type of opt-out requirement is unconstitutional. So the type of scrutiny, the standards that the Supreme Court's applying now apply to this case as well, because there's First Amendment state action. So Janice would apply to this case as well, just like this court applied the Hudson case to the Railway Labor Act and the Shea case. And this case involves... Let's say we do what you want, and this case then goes to the Supreme Court. And obviously the Supreme Court's told you in Janice it doesn't think that the state action is satisfied here. What are you going to tell the Supreme Court about state action when this is a private agreement? Right. So I would argue, Your Honor, that I would tell the Supreme Court that they haven't overturned Hansen. In fact, they even affirmed it in the Ellis case because there it applied... But Janice overturned Daboud. So I mean, we're in a world where the Supreme Court might overturn stuff. Right. The Supreme Court is telling you they might very well overturn all of the private sector cases. What are you going to tell them? Well, Your Honor, in this case has a unique aspect to it that this court or the Supreme Court could deduct the First Amendment question just like it did in the Street case. And also the Ellis decision, too. It could use constitutional avoidance to just construe the statute to not allow... I think Judge Ho wants to know what your state action argument is. Right. Forget all the case law. Is there a state action when private parties contract? Yes, Your Honor. As the Hansen decision talked about, whenever there's a federal preemption of a state right to work law, those are private rights contained in a state law. And the Supreme Court in Hansen found that the federal preemption there was sufficient state action. So that would be my argument. And I mean, the Supreme Court hasn't overturned that. So I would argue it's still binding. And this case involves fees for politics, just like the Janus decision, the Shea decision. Notice that when a nonmember fails to opt out of paying for the fall of the And this court in Shea held that that implicates free speech rights that lie at the very core of the First Amendment. And so those fees are the same types of fees that are being charged in Janus. Both cases, Shea and Janus, in this case, all involve fees for politics. So we would take the position that Janus applies in this situation here. And the district court... Let me say this. I respect where you're coming from, at least in as much as you represent an individual who wasn't part of the majority. They did not want to vote for a union, I assume. Nevertheless, if I understand, your client is essentially complaining about not wanting to be bound by an agreement entered into between a private employer and the private collective bargaining unit. Is that correct? Well, no, your honor. It's also the union's use of the procedure set up in the Railway Labor Act that if a union's... The union's basically given the power to enter into a forced fees agreement with the employer, and that triggers the federal preemption part of the Railway Labor Act that destroys his rights under Texas's right to vote. I understand that labor unions need to use the tools available in law, but you could say the contract case. And we don't say that a breach of contract case is state action. Otherwise, everything is state action. So I think that's what... We're trying to get to what, as Judge Duncan alluded to, what is the Supreme Court telling us in that footnote? I think it's telling us that our state action doctrine rulings were kind of messed up, and we're about to overturn them. And I'm trying to give you the opportunity to tell us as an original matter, that these cases are actually, in fact, correct, and the Supreme Court should not and will not overturn them. Well, Your Honor, what the Supreme Court said in Hansen, I think, is where the state action lies here, because there's federal preemption of a right to work law. It's wiping out Mr. Baisley's rights to not pay for these fees. And in Hansen, that's what the Supreme Court held was enough. And Hansen's still binding on this. Well, I understand, because I want to make sure I have your argument exactly. You agree that a traditional breach of contract suit is not state action, even though it's common law providing tools to the parties. Your argument is that because it's federal law rather than state common law, that that's the state action? Well, I agree, Your Honor, that a run-of-the-mill breach of contract case normally doesn't have state action implications. So what's the difference? Well, as in Hansen, notice that the unique aspects of a union entering into a forced agreement with an employer, because the Railway Labor Act preempts the rights that Mr. Baisley would have had. I know what Hansen said, and I'm not trying to badger you, I just want to understand the argument. Why does the federal law overlay as opposed to state common law, why does that make a difference as an original matter, as a correct matter of law? Because the Supreme Court's telling us Hansen's probably wrong. Well, Your Honor, because the federal government's working in concert with the union to strip away Mr. Baisley's rights under Texas' state right-to-work law. There's a Supreme Court case that came out a few years ago called the Hallock decision, and it mentioned that one of the categories where there's state actions when the government's working in concert with a private party. It's not a perfect fit, but this case is also within a vein where a private party and the government are working together. Here, Mr. Baisley's rights under Texas' state right-to-work law are being wiped out. What would you say about a heavily regulated monopoly? I'm sorry, a heavily regulated industry, although that might include a monopoly. If a private company is heavily regulated, and there are many industries that are heavily regulated, those are cooperating with the federal government. Is that a state action? It just depends. The Jackson case and the American manufacturing case make clear that it just really depends on the different facts that are in play, and that there's not really a clear line. It's really kind of a case-by-case basis. Those are the two cases that the court cites in its footnote in Janus, which is why you brought them up. But the court says the proposition of government action was debatable when Abood was decided and is even more questionable today. I take it that the court thought that American manufacturers in Jackson really don't support the idea of government action, but do you read those cases differently? Your Honor, those cases are distinguishable because both the Jackson and the American manufacturing case were basically saying, well, the fact that the government's authorizing somebody to do something is not enough for state action, but what distinguishes this is, as I was mentioning earlier, the union's taking advantage of a procedure the federal government set up to basically preempt somebody's rights under Texas's state right to work law. So this case is distinguishable from those. And Hanson, Ellis, and Shea are binding on this court until the Supreme Court rules otherwise. I mean, the fact that it's maybe questioning this, the Supreme Court's warned lower courts from jumping the gun and then saying that, well, Supreme Court's about to overrule this, so we're going to kind of go our own way on this. So Hanson's still binding, and Shea's still binding, and Shea applied a public sector case to strike down IAM's annual opt-out requirements. And Janus is now the current standard to clarify that Hudson's standard is in the Knox decision and talked about how now exacting scrutiny applies under First Amendment and how opt-out requirements can't survive that. So for all those reasons, we would say that IAM's opt-out requirements here are unconstitutional, and unless the court has any questions, I've reserved five minutes for rebuttal. Thank you. Thank you, Counselor. You have reserved time. Ms. Roma. Ms. Roma, you're on mute. I want to make sure we hear you. Can you hear me okay? Yes, ma'am. Okay. Thank you. Good morning, Your Honors. Good morning, Mr. Jennings. My name is Elizabeth Roma, and I represent the International Association of Machinists and Aerospace Workers. As the district court found, plaintiff's claims challenging the IAM's opt-out procedures for recognizing dues objectors in the private sector are foreclosed by 60 years of binding RLA press spend. Appellant argues that Janus changed this, as the district court found it did not. This morning, today, for my time allotted, I plan to first discuss the statutory right to dissent created in Street, and then I was planning on discussing why Janus does not apply here, though it sounds I'll probably do that in rather brief order, given some of the questions asked by the court. And obviously, I'll answer any questions the court may have, too, as they arise. Ms. Roma, I mean, we're obviously bound by our Shea panel decision. It's from 1998, but it's a binding decision of the court. I assume everybody agrees. My question is about what's the holding of the case? I mean, Judge Garwood, you know, was very precise in the way he wrote the case. He said the sole issue before the court is whether the annual objection renewal requirement is permissible. Now, admittedly, there is some language in there that appears to approve the one-time continuing opt-out. But my question is, is that part of the holding of the case? And the reason I'm asking, which I guess is obvious to everybody, is I take it we're bound by holdings of prior panels, but not dicta. So, what's your view of what's the holding of Shea? My view of the holding of Shea is, first, is that Shea recognized and analyzed the conclusions. First, it found that Street was binding and placed the burden on the employee to raise the objection. And second, Shea came to the conclusion that with the burden placed on the employee to raise the objection, that an annual objection, I'm sorry, the requirement allowing an employee to raise an objection and finding it continuing in nature and not having it be annually applied is the procedure that least interferes with any potential RLA or First Amendment issues. I also just wanted, since we're talking about Shea, just point out to a couple issues raised by Mr. Jennings. And first of all, I read Shea differently than Mr. Jennings does. I don't read it as a First Amendment case at all. I read it as applying the RLA. Consistently throughout his decision, it analyzes the cases arising under the RLA, under Street, under Allen. And even in deciding to apply Hudson, the court says, and we quote, we hope this requirement that the procedures be carefully tailored to minimize the infringement is the standard by which the union procedures at issue here must be evaluated under the RLA. So, I think that this is a case that arises under the RLA, not the First Amendment. Well, either way, Shea involved your union. And up until this lawsuit was filed, you were still requiring annual opt-outs. I don't understand that. Oh, I'm sorry. I think there must be a mistake. Just to clarify, the IAM does not require annual opt-outs. The IAM says that an individual can choose to submit an annual opt-out or they can make their objection continuing in nature, in which case they will not need to submit any additional objections in the future. And I note that this is in the record at, it's Record of Appeal, page 23, that references the IAM's procedure. Here, initially, Mr. Baisley did not indicate that he wished for his objection to be continuing in nature. And so, he was treated as an annual objector. But after filing this litigation, we realized it was his intent to do so. And he knew what the policy was. He had it in front of him and referenced it in his letter. So, we say, we understand you intended to make your objection continuing in nature. And so, we recognized that. And I did, I guess, since we're on the topic, I'd also like to note for the record that during oral arguments before the district court, Plaintiffs' Council conceded that this was no longer an issue in the case. And I refer you to the transcript at Record of Appeal, page 241 and 235. Do you think the case is moot then? Do you think, I guess, to the extent he's objecting, I'm sorry, I... No, no, I guess you're right. So, you've given him a continuing objection, but he's still saying the continuing objection violates the First Amendment. Is that right? My understanding of the case is he's saying that he never should have had to file an objection to begin with. Yeah. Because it's not disputed here that he's not compelled to pay any money for objectionable purposes after he submitted his objection, which I think was in November 2018. Okay. So, I think that's not an issue here. I want to go back to what you said earlier. You don't regard Shea as a First Amendment case at all. And I think this is an important point, because that would certainly, I think, affect the whole analysis. But on page 515 of Shea, I see this language, we hold that the annual written objection procedure is an unnecessary and arbitrary interference with the employee's exercise of their First Amendment rights. How is Shea not a First Amendment case? We can talk about its implications, but isn't it explicitly a First Amendment case? I think, and I will acknowledge that there is some, I would say, inconsistent language within Shea. I'll grant you that, but just to be clear, it says we hold. It's going to be very hard for us to ignore a sentence that starts with we hold. Would you agree? Well, I guess they say we hold several times. Yes. So, I agree. So, we hold. It's under the RLA. We hold. It's under the First Amendment. So, I agree. It doesn't say we dicta. It says we hold. Right. And I think they say we hold a couple of times. So, but I would like to just say a couple points to that. One is, you know, Shea starts off by doing a really in-depth analysis of the court's decision in Street, the Supreme Court's decision in Street, the Supreme Court's decision in Allen, and then it says in another line of cases, and then it jumps over to Abood. And I will say this, and this is what I think one of the issues that the Supreme Court raised in Janus is Abood looked to the decisions of the Supreme Court under the RLA to determine what the standard should be in the public sector. And Janus says, shame on you, Abood. You went wrong from the start by even looking there. But what happened after Abood was issued in, I think, 1977 is that sometimes the cases, because Abood said it's the same standard. And I think sometimes the standard got a little conflated in some of the case law over the years after the fact. Either way, Shea also says that even if this, even assuming that Shea is a First Amendment case, and I do, I view it as an First Amendment case, Shea says there's nothing wrong with the IM's opt-out procedures. Okay. So let's go through this then. I'm imagining a world hypothetically in which you, I guess, you would lose the battle but win the war. And opposing counsel would win the battle but lose the war. Because what I see is Shea says First Amendment applies to the private context. And then Janus in the Supreme Court says, if the First Amendment applies, you have to have affirmative consent. Opt-out is unconstitutional. So it seems to me that we're bound by both of those holdings. Therefore, we should rule in one direction. But of course, the Supreme Court's going to tell you, perhaps in this case, you guys the First Amendment, in fact, doesn't apply to the private sector, in which case, you'll ultimately win there. Tell me your reaction to that potential. Yes, I totally understand. I mean, there's much, there's been much debate about what Janus means, and what broader Janus implications would be in the private sector. Could you respect that we're bound, obviously, by Shea and by Janus? Yes, I totally respect that. And I also understand that I think both decisions sent a little bit of mixed messages, and we're trying to kind of sort through it after the fact. But I will also acknowledge the Supreme Court argument. Yes. So in the Supreme Court, I do know in Janus, it says, Janus says, about the private sector, is that right after it said, I have sincere doubts about whether or not there's any state action here. Janus goes on to say, assuming for the sake of argument that the First Amendment applies, that Janus still raised, quote, very different issues between the private and the public sector. And this is at Janus at 2480. It went on to discuss that in Hansen, the Supreme Court passed on the bare authorization of a permissive statute, and found that it wasn't inconsistent with the First or Fifth Amendments. Here is a very different issue, because in Janus, it involved the state actually passing a statute compelling state employees, state employees to pay the union fees, all of which they said, were related to collective bargaining. So here, we're dealing with fees, some of which are related to, I'm sorry, all of which Janus said, all of the fees are related to political issues. They said all collective bargaining in the public sector is a political issue. But they also said that the state was compelling. Then Janus went on to say, and acknowledged that in the Railway Labor Act, the issue is that you have a permissive statute. The statute isn't compelling anything. The statute is allowing private parties to agree on a private contract to agency fees, but the government isn't compelling that. In Hansen, Hansen passed on the bare authorization of the statute itself. But Hansen didn't, and I think we can all acknowledge Hansen did not do any really in-depth analysis of a state action issue. But I do think that the state action at issue in Hansen is the statute itself. I don't think, Hansen never found the union by itself is a state actor, or that all conduct of the union should be viewed through a state actor lens. And I would acknowledge too, that at issue in Shea, were expenses that in Shea, the plaintiffs, because they missed the annual objection window, that they were compelled to pay for expenses that they hadn't expressed an objection to. And the court in Shea said that that was offensive to the Railway Labor Act, and arguably forced them out. But here, that's not the issue. Mr. Baisley filed an objection, his objections continuing in nature, and no expenses after he voiced that objection will be compelled to be paid for. No fees collecting from Mr. Baisley will be compelled for any political purposes, or expended on any political purposes. So the issue here, you're right, the issue here is the tailoring of the way of, I mean, assuming First Amendment applies, the idea is, I think, is that the union only gets to take that money if the procedure is adequately tailored to respect the First Amendment right. I guess that's why we're talking about opt-outs versus opt-ins. I mean, that's how I understand we're even talking about the issue, right? An opt-out is a far less tailored provision than an opt-in with respect to First Amendment rights. Is that the idea? Yes, yes. So that leads me to my question about Shea. Do you read Shea as providing the same level of scrutiny, same level of tailoring analysis as later cases? Judge Garwood writes, the procedure must be carefully tailored. Is that the same thing that's going on with exacting scrutiny, or is it, I understand it's somewhat fictional to talk about all these levels of scrutiny, but what's going on in Shea, and is it the same thing as that they're doing today? Well, I mean, Shea was applying the level of scrutiny applied in Hudson, which obviously came from this abode line of cases. I mean, the extent, well, I guess, I'm sorry, I should say it has been overruled because there's no such thing as a Hudson notice anymore in the public sector, because nobody is compelled to pay any fees for any purposes whatsoever. But I do think that the, again, I think that, I'm sorry, Your Honor, I lost my train of thought. Would you mind repeating your question? That's all right. My question was poorly articulated. I'm just trying to get it, is the level of scrutiny that was applied in Shea, which I suspect were bound by unless it's been clearly overruled, is it the same thing as the Supreme Court is doing in more modern cases like Knox and Harris and Janice? I would say it's probably, I would say that you're right, that Shea, basically whatever standard it's articulating, we're bound by, and it says these procedures, the opto procedures are fully consistent with that standard. I think it's a little bit tricky because it does say carefully tailored, and I think that the exacting scrutiny means the least, the extracting scrutiny standard that is articulated in Knox and Janice, which I don't think is appropriate, but it articulates the least restrictive means. And so there, it's actually- See, this is angels dancing on the head of a pin. Is exacting scrutiny the same thing as strict scrutiny? I thought it wasn't. Well, I mean, I will say this, Janice says it's not. Janice says that exacting scrutiny is something less than strict scrutiny, and that they don't need to decide. It's a little unclear, and I think the case law is a little vague about exactly what exacting scrutiny is. What we know, because we've been told by the Supreme Court, is whatever the standard is in Janice, Janice says you have to have affirmative consent. Well, Janice had said you had to have the affirmative consent to deduct directly from employees' paychecks, any money for any... Yeah, so that's a slightly different issue. I think what opposing counsel is wanting is to apply Janice to his client. Fair enough. Yes, yes. No, that's true, except I agree- Sorry, go ahead, please. I was just going to say, I agree with some of the line of questionings that you had when you were asking opposing counsel that Janice basically says, don't go there. They're not inviting courts to- All right. And the problem I have, because I want to make sure I've got your argument completely, the problem with following Janice is we also have to follow Shea. And so I guess my question ultimately is, if we conclude that Shea tells us we have to apply the First Amendment to private sector, is that essentially the only debate that you all are having is, do we apply the First Amendment to the private sector? Yeah, I would think so. I mean, that seems to be the largest issue here. So, I mean, I guess let's say that Shea says that you have to apply the First Amendment here, then I think you would look to Janice's language saying, these are very different issues. The First Amendment standard that's applied in the public sector wouldn't be the same. You don't import the whole analogy because there are very different issues at play and First Amendment principles at play when a state compels and when all of the fees are deemed political. All right. So, very good. So, you have a backup argument then. Your argument is not just that the First Amendment doesn't apply. It's also separately that the First Amendment, even if it applies, as Shea tells it does, it applies differently and you get different results because of the different private versus public context. Yes. And that's where I go back to Janice saying, Janice said, even assuming for the sake of this, this is Janice, that Janice still found, quote, very different issues between the public and the private sector. So, there's no reason to even assuming, and even if we are constrained by the First Amendment here, it's an entirely different First Amendment analysis than applied to the public sector cases. And that there's no reason that you would have to say that, again, a private, an opt-out procedure pursuant to a privately negotiated union security clause by United and IAM that is permitted by the RLA, but not required, basically has to have the Janice level or Janice would apply and everything would be thrown out. I mean, if Janice applied here, everything would go. Yeah. Your argument sounds a little bit more nuanced than I was thinking. Is your argument more complex than, hey, look, Shay is still abiding precedent and Shay validates what we do here. No, I'm sorry. And just to be clear, and I actually mentioned this in the beginning of my argument that even if there's any dispute, Shay says you're still okay under the First Amendment. You know, even if there's a dispute about how Shay got there or exactly what it was doing, Shay says the opt-out procedures that the IAM is applying are fully permissible. And I would just like to add in my last few minutes that even if there's any doubt, I mean, I do think we're doing a lot of guesswork and it's going on both sides about what the Supreme Court might do if this issue were in front of us. But Rodriguez says that's not for us to do. That's not for us to try to read the tea leaves of what Janice may or may not do if this issue comes before it. And so I think there are very challenging issues that I think don't necessarily have to be decided in this case, because I think the binding precedent as it applies today to private sector agency provisions, like the one at issue here, gets us the result that this case should be dismissed. If that's nothing, then my case to us. Any further questions? Thank you, Your Honor. Thank you, Counselor. Mr. Jennings, you've reserved five minutes. Yes, Your Honor. I just want to kind of go back to your question, Judge Joe, about us losing the war at the Supreme Court. The Supreme Court could choose to dodge state action issues and the First Amendment issue because it can still construe the statute narrowly and just apply the Railway Labor Act. Yeah, but why would it do that if there were no constitutional issue? Well, Your Honor, in a constitutional avoidance case, if the Supreme Court recognizes that there's a tension with the First Amendment, it can decide that we're not going to decide that, we're going to go to the statutory question. And it would have a good reason to do that in this case, because there's the precedent of Hansen and Ellis. So if the court decides, for stare decisis reasons, we don't really want to go down that route, it could just decide for this specific case because we're only challenging the opt-out requirement that it's going to construe the statute. It's not allowing that. You mean the Supreme Court could think the RLA has some First Amendment ingredient in it, even if the court really doesn't think that the First Amendment applies? No, Your Honor. I think that the Supreme Court will just recognize the fact that it's found state action in the past and it doesn't want to go down that route of overturning that. There's still the federal preemption argument that I mentioned earlier, Supreme Court, especially because the Hansen decision is very specific to the types of procedures that a union's using. It doesn't have implications for other types of cases, because it's very unusual for a union and employer to be collecting fees from non-members. I mean, most private organizations need voluntary consent to force somebody to pay for something. The unions have a very unique power that Congress has granted them. And for that very unique situation, there's state action present. So the court could decide the best reading of the statute is that the text of the RLA, nothing in there says that you have to opt out. The legislative history also has a lot of things in there about employee-free choice. The Felter decision also, that was burdens on somebody's statutory rights. Also, too, the statute only authorizes... Your theory basically is the Supreme Court, I think you're right, the Supreme Court in cases like Street sort of said, you know, whatever the First Amendment may say, we think the Railway Labor Act is quite sensitive to these concerns, whether the Constitution is or not. Correct you. Correct. I ask you to engage with opposing counsel on what I'll call her backup argument, which is even if you accept that Shea requires us to apply First Amendment analysis, Janice tells us, and I'm just quoting here from I think it's section 6A of the opinion, even assuming that the First Amendment applies to the private sector, in the public sector, core issues such as wages, pensions, and benefits are important political issues. But that is generally not so in the private sector. That does suggest that the First Amendment could apply in both sectors, but yet allow opt-outs in the private sector while disallowing them in the public sector. No, Your Honor, I don't think that Janice is implying that. Whenever it's talking about the distinctions between public and private sector... It does say, quote, the individual interests at stake still differ. So I'm trying to figure out how do they differ for purposes of this case? Because we're obviously supposed to follow Janice here. Right. So the Janice decision was looking at whether collective bargaining, where the union is talking with the employer, whether that is political, whether that's the First Amendment question. And when the Janice decision was talking about the distinctions between private and public sector, it was exclusively in the context of talking about is collective bargaining different in the private sector or the public sector? In the public sector, a union is talking with the employer and the Supreme Court found that that was political. And it suggested that maybe a union talking with a private employer might not have the same First Amendment implications. But what we're talking about in this case are the fees not related to collective bargaining, the fees that this court said that lie at the very core of the First Amendment, the fees that I.M. uses to do political things, things unrelated to collective bargaining, things that are ideological. And so because this this case involves fees for politics, it's on all fours with Janice regarding the opt out issue. The Supreme Court at the very end, the last few paragraphs talks about how if if the fees are political, then you have to have affirmative consent in order to to collect them. And just real quickly, I would say that Shea is exacting scrutiny because the Knox decision clarified that the Chicago Teachers Union case was really exacting scrutiny. Knox kind of goes into that background. And I see that my time's up. And unless there's any questions, I'll conclude there. I have an unrelated question. Who are those people in the portraits behind you? Yes, there are people who donated to the foundation in the past. But yeah, we're in a conference room right here. Cool. All right. Thank you. Thank you. Thank you, counselors. The case is submitted. Thank you.